# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Kevin Patrick Huff, | ) CIVIL ACTION NO. 9:09-0520-RBH-BM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Trevor Outlaw, Federal Prison Industries, | ) |
| Federal Bureau of Prisons, Loretta Parks, | ) |
| D. Johnson, Ardelphius McLaughlin, | ) |
| and John Owen, | ) |
| | ) |
| Defendants. | ) |
| | ) |

This action has been filed by the Plaintiff, pro se, pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).[1] Plaintiff, an inmate with the Federal Bureau of Prisons (BOP), alleges violations of his constitutional rights by the named Defendants. Plaintiff also asserts a claim under the Federal Tort Claims Act (FTCA).

The Defendants[2] filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on September 18, 2009. As the Plaintiff is proceeding pro se, a <u>Roseboro</u> order was

---

[1] In <u>Bivens</u>, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A <u>Bivens</u> claim is analogous to a claim under 42 U.S.C. § 1983. However, federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of *state* law. See <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 814-820 (1982). <u>Harlow</u> and progeny indicate that case law involving § 1983 claims is applicable in <u>Bivens</u> actions and *vice versa*. <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994). <u>See also</u> <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 530 (1985); <u>Turner v. Dammon</u>, 848 F.2d 440, 443-444 (4th Cir. 1988); <u>Osabutey v. Welch</u>, 857 F.2d 220, 221-223 (4th Cir. 1988); and <u>Tarantino v. Baker</u>, 825 F.2d 772, 773-775 (4th Cir. 1987), <u>cert. denied</u>, <u>North Carolina v. Tarantino</u>, 489 U.S. 1010 (1989).

[2] The Defendant D. Johnson, who is not an employee of the BOP, has never been served with process. See Court Docket No. 30.



entered by the Court on September 22, 2009 advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to file an adequate response, the Defendants' motion may be granted, thereby ending his case. After receiving an extension of time, Plaintiff filed a memorandum in opposition to the Defendants' motion on December 7, 2009, following which the Defendants filed a reply memorandum on December 17, 2009.

Defendants' motion is now before the Court for disposition.[3]

## Background and Evidence

Plaintiff alleges in his unverified federal complaint[4] that he worked on a prison industry job (UNICOR) at the Federal Correctional Institution (FCI) Williamsburg in Salter, South Carolina. In his first claim, apparently presented under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, et. seq, Plaintiff alleges that on September 4, 2007, the Defendant Outlaw dismissed Plaintiff from his UNICOR work status based on the recommendation on a UNICOR staff member without consulting anyone other than the UNICOR staff. Plaintiff alleges that this violated a policy (PS8120.02), thereby depriving him of his "property interest" in working in the UNICOR program.

Plaintiff alleges that Outlaw fired him for violating a no tolerance call center rule,

---

[3]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[4]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). However, Plaintiff has filed an *unverified* Complaint. Therefore, the undersigned has not considered the factual allegations set forth in the unverified Complaint as evidence in issuing a recommendation in this case.

2



while another inmate (Renard Nealy) was found to have used a UNICOR staff member's office phone without authorization (a violation listed in the call center rule book), but was not fired. Plaintiff further alleges that another inmate, Carl Crowe, was found to have committed several violations listed in the no tolerance section of the rule book, but was not fired, and that yet another inmate (named "Curry") was found to have committed a violation of a listed rule, but that Outlaw did not fire or suspend Curry. Plaintiff alleges that Outlaw has also not fired several other inmates who violated these so called no tolerance rules. Plaintiff alleges that the BOP is allowing FCI Williamsburg UNICOR staff to practice termination procedures in a selective manner, contrary to BOP policy. Plaintiff seeks to be returned to UNICOR work status, as well as monetary damages.

In addition to the above tort claim, Plaintiff asserts constitutional claims under <u>Bivens</u>. Plaintiff alleges that on August 23 or 24, 2007, he was confronted by the Defendant Loretta Parks and several other UNICOR workers, and was told he would have to maintain heightened work requirements which were unfair. Plaintiff alleges that Parks told him that, if he did not want to work, he could "just quit". Plaintiff alleges that the next day at work, August 27, 2007, Parks retaliated against him by writing a job action report accusing him of searching a number that was unrelated to the call. Plaintiff alleges that Parks did not follow the usual procedure of reviewing the call with Plaintiff to first determine if there was some legitimate reason for the alleged violation. Plaintiff alleges that Parks recommended on the report that he be terminated, and that Parks further falsely reported that he refused to sign the report.

Plaintiff alleges that later that morning, the factory manager (Defendant Ardelphius McLaughlin) reviewed Parks' report and told Supervisor "Jones" to put Plaintiff back into the work rotation. Plaintiff alleges, however, that less than an hour later, Parks ordered Jones to take Plaintiff



out of the rotation, and Parks then told Plaintiff she was suspending him from UNICOR work status, which Plaintiff alleges is a decision reserved for Parks' supervisor, McLaughlin, because Outlaw at that time had not yet returned to work. Plaintiff alleges that McLaughlin inappropriately allowed Parks, his subordinate, to suspend Plaintiff's work status, even though McLaughlin knew that it was his duty to make that decision. Plaintiff alleges that McLaughlin subsequently told him that Parks had told McLaughlin about statements Plaintiff had made concerning new work requirements scheduled to go into effect, that he would support any actions Parks took in the matter, and recommended that he apologize to Parks and ask her if he could return to work.

Plaintiff alleges that on September 5, 2007 he saw Outlaw in the dining hall and asked Outlaw if he could return to work. Plaintiff alleges that Outlaw told him he had not yet made a decision on what action he was going to take in Plaintiff's case, and that he was concerned about the statement Plaintiff had made to Parks, in the presence of other inmates, concerning the new work requirements. Outlaw further told Plaintiff that Johnson had stated that he did not want Plaintiff back in the factory because he might encourage complaints by other inmates. Plaintiff alleges that Outlaw exceeded his authority by independently dismissing Plaintiff from his unit or work status.

Plaintiff also alleges that his due process rights were violated when Parks suspended him after allegedly observing Plaintiff violate a call center rule, without either allowing him to see the call or the report, giving Plaintiff a chance to explain the perceived violation, and falsely stating in the report that Plaintiff had refused to sign. Plaintiff also alleges that Parks' conduct violated his due process rights because she exceeded her authority in suspending him, while McLaughlin violated his rights by allowing Parks to suspend him. Plaintiff alleges that Outlaw violated his rights by terminating Plaintiff from UNICOR work status without interviewing the Plaintiff or consulting the

4



unit team, as required by policy. Plaintiff further alleges that Outlaw was required to submit a report and evidence to a disciplinary hearing officer to decide if any infraction had in fact been committed. Plaintiff alleges that the Defendant John Owen, the Warden at FCI Williamsburg, was made fully aware of the facts of this case and did nothing to stop these unlawful practices. Finally, Plaintiff alleges that Outlaw discriminated against him because numerous other inmates committed call center rule violations, but were not fired. See generally, Complaint.

Plaintiff has attached numerous exhibits to his complaint, including a copy of his job action report, copies of documents denoting his attempts to resolve the issues surrounding his termination from his job including a request for administrative remedies, and a response he received from the supervisory attorney of the BOP consolidated legal center regarding an FTCA claim Plaintiff filed concerning his termination. None of these documents have been properly authenticated so as to constitute evidence in this case. Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000)["Documents supporting or opposing summary judgment must be properly authenticated."].

In support of summary judgment in the case, the Defendant Loretta Parks has submitted an affidavit wherein she attests that she is the supervisory production controller at the prison industries facility at FCI Bryan, Texas. Parks attests that at the time relevant to Plaintiff's complaint, she was the Quality Assurance Manager at the prison industries call center at FCI Williamsburg. Parks attests that Federal Prison Industries, which operates under the trade name "UNICOR", operates a variety of factories and service centers which provide goods and services to a variety of government agencies. UNICOR operates a call center at FCI Williamsburg which provides inmate operators to respond to directory assistance calls.

Parks attests that is unusual for federal prison inmates to be given access to data bases

5



of information about members of the public, and as such there are very specific and strict rules about how and when inmate operators can access the data base. Parks attests that in order to ensure these rules are met, UNICOR implemented recording and review processes which record inmate operator contacts with the public and which identify what the inmate operator was accessing in the data base and at what point during the call. Parks attests that, as quality assurance manager, one of her duties was to conduct random reviews of the various contacts inmate operators had during the directory assistance calls, and that in doing so she would randomly punch in an operator code and monitor whatever call was retrieved. Parks attests that if she found improper behavior during the call, she would write a job action report, and depending on the severity of the violation, she could recommend various job sanctions, including removal. Generally, this job action would be discussed with the inmate and, if possible, remedial action could be taken.

Parks attests that she is familiar with the Plaintiff, and that on August 27, 2007 she reviewed a call processed by the Plaintiff in which Plaintiff did not repeat the city and state requested by the caller. Rather, he accessed information in New Orleans and searched for a list for Joe's Corn, even though the caller was requesting a number for Budget Rent a Car. Parks attests that Plaintiff repeated the request for Budget Rent a Car, but was searching for Joe's Corn in New Orleans. Parks attests that once the New Orleans information appeared on his screen, he then conducted a second search in the toll free data base for Budget Rent A Car and provided that number to the caller. Parks attests that this was a blatant violation of UNICOR call center rules, and that she prepared a UNICOR job action report detailing this information and recommending that Plaintiff be terminated.

Parks attests that she forwarded this report to the factory manager for review, but does not recall discussing the report with the Plaintiff, although it was her general practice to do so. Parks



6

attests that she recommended Plaintiff's termination because of his flagrant violation of call and work rules, and does not recall having any prior conversations with him about his dislike of the call processing standards, although it was common for inmates to complain about those standards. Parks attests that these standards are set to ensure high quality and appropriate call processing in an efficient manner, and that even though numerous inmates have complained about these standards, such complaints do not impact her review of inmate operator calls nor her recommendations for job actions. Parks further attests that she recommended at least five other inmate operators be terminated as a result of the same improper use of the data base.

Parks attests that she did not put in his report that Plaintiff refused to sign the job action report, as she did not complete that portion of the form, nor is this notation in her handwriting. Parks attests that that notation appears to have been written by the factory manager, Mr. McLaughlin. Parks further attests that any staff member in UNICOR could temporarily remove an inmate operator from the call center line pending review of a job action, and while she does not recall if she suspended Plaintiff or not, it would have been appropriate for her do so, especially given Plaintiff's inappropriate action during the telephone call.

With respect to Plaintiff's claim that another inmate was allowed to place a directory assistance call from her office phone during which he discovered call center infractions by yet a different inmate, but that neither of these inmates were terminated, Parks attests that the inmate referred to in that allegation was an inmate assigned as a trainer. Parks attests that it was part of her responsibility to ensure that this inmate was trained and knowledgeable about the process in order to assist other inmate operators, and that she had him in her office while she was conducting test calls to the FCI Williamsburg call center. Parks attests that they found several minor problems in



responding to customer requests, and that these errors were pointed out and used as a training opportunity. Parks further attests that these "violations" were errors that were correctable, as opposed to the blatant violation of rules committed by the Plaintiff. See generally, Parks Affidavit.

The Defendant Ardelphius McLaughlin has also provided an affidavit, wherein he attests that he is the Factory Manager at the call center at FCI Williamsburg. McLaughlin attests that there are strict work rules at the call center that prohibit inmate operators from accessing information that is not requested by the caller, and that violations of this rule can lead to an inmate's termination from UNICOR. McLaughlin attests that Plaintiff worked as an operator for approximately fifteen (15) months prior to his termination from UNICOR in September 2007, that Plaintiff was familiar with the work rules and prohibitions on accessing information not related to the caller's request, and that Plaintiff was a good worker who had advanced to the highest available pay grade.

McLaughlin attests that on August 27, 2007, he was made aware of Plaintiff's improper actions during a directory assistance encounter, that he received the job action report prepared by Parks, and that he reviewed the description of the incident and agreed that it was a blatant violation of the work rules. McLaughlin attests that he spoke with Plaintiff and discussed the job action report and the recommendation of termination, and that Plaintiff was given an opportunity to make a statement by writing on the form but refused to do so. McLaughlin attests that he noted that Plaintiff refused to sign the job action report and wrote "Refused to sign" on the form under the heading "Inmate's Comments". McLaughlin attests that he concurred with Parks' recommendation and forwarded the request to the Superintendent of Industries, Mr. Outlaw, for final decision.

McLaughlin attests that Plaintiff was temporarily removed from operator duties during the time this job action report was being reviewed and considered by Outlaw, which was appropriate



given the severity of Plaintiff's infraction. McLaughlin further attests that Parks had the authority to temporarily remove any inmate operator from the line anytime she recognized a problem pending further review or investigation. With respect to Plaintiff's claim that this job action was in retaliation for his complaints to Parks about changing work requirements and her fear that Plaintiff would cause other inmates to complain, McLaughlin attests that inmate operators routinely complain when changes are made, and that while he does not recall if Plaintiff complained about the changes in 2007, even if he did, it was not the reason for his termination. Rather, Plaintiff's termination was for accessing information unrelated to a caller's request, which was a direct violation of the rules. McLaughlin attests that it was standard practice to terminate any inmate operator who was found to violate the work center rules concerning improper access of data, and that over the past three years, some seventy-five to eighty inmate operators have been terminated for this behavior. See generally, McLaughlin Affidavit.

The Defendant Trevor Outlaw has submitted an affidavit wherein he attests that he is the Superintendent of Prison Industries at FCI Williamsburg, where UNICOR operates a call center. Outlaw attests that in early 2007, he reviewed a job action report recommending that Plaintiff be terminated from UNICOR due to his improper actions during a directory assistance encounter. Outlaw attests that after review of the report, he concurred with the recommendation, and that as superintendent, he is empowered to remove an inmate from the UNICOR work detail in cooperation with the Unit Team. Outlaw attests that this policy requirement ensures communication to the Unit Team when the inmate is being removed from the UNICOR detail so that he can be given another work assignment if necessary. However, the Unit Team does not control when an inmate is assigned to or removed from UNICOR. Outlaw attests that if an inmate has been removed from UNICOR due



to improper behavior on the work site, it is appropriate to place them on a different work assignment, and that in this case the Unit Team was notified of the reason for Plaintiff's removal from UNICOR and he was given a different work assignment.

Outlaw further attests that there was no need for an incident report to be written charging Plaintiff for a violation of the disciplinary rules. Outlaw attests that, while disciplinary action could have been taken, Plaintiff's behavior violated the work rules in UNICOR, and it was deemed sufficient to simply remove him from his work assignment. There is no policy requirement that an inmate be subjected to disciplinary action prior to being removed from a UNICOR work assignment. Outlaw also attests that he does not recall having any conversation with Plaintiff on September 5, 2007 in which he supposedly stated that he was concerned about Plaintiff's complaints to Parks about changing call processing times, nor did he base his decision on any complaints that Plaintiff may have voiced about changes in the call processing requirement. Outlaw attests that many inmates complained about such changes, and that such complaints are simply a part of the daily activities in the call center and did not in any way impact his decision concerning the Plaintiff. Outlaw also attests that he does not recall having any conversation with Mr. Johnson about complaints from the Plaintiff or about whether he should be allowed to return to work, and that Plaintiff was removed from UNICOR due to his violation of the posted work rules, nothing more.

With respect to Plaintiff's claim that Outlaw had somehow treated him differently from other inmates who had violated work rules, Outlaw attests that he endeavors to remain fair and impartial in making decisions, always keeping security and the good of the UNICOR operation in mind, and that he takes the recommendations of the factory manager and the quality assurance supervisor into consideration when taking job action concerning UNICOR workers. Outlaw attests

10



that while there may be other situations where it is necessary to take job action against an inmate worker, if the violation of the work rules is less severe, then the job action will be less severe. Here, Plaintiff's violation was deemed to be very significant, and dismissal was the appropriate sanction. <u>See</u> <u>generally</u>, <u>Outlaw Affidavit</u>.

The Defendants have also submitted a copy of the call center rules, on which Plaintiff acknowledged receiving a copy. This document shows that misuse of UNICOR call center electronic communications devices and/or acquiring phone numbers or other information from the computers is a violation of UNICOR's set minimum work standards, and that such conduct could result in disciplinary action and/or termination. <u>See</u> <u>Defendant's Exhibit F</u>. A copy of Plaintiff's Inmate Work Detail History has also been provided. <u>See</u> <u>Defendant's Exhibit G</u>.

As an attachment to his memorandum in opposition, Plaintiff has submitted an affidavit wherein he attests that he was hired as a call center operator in May 2006. Plaintiff attests that because a large percentage of the calls being received by inmates at the call center were calls in which the computerized operator system could not comprehend the information being provided by the caller, it was common for inmates to receive calls in which the caller was still attempting to provide information to the computer. Plaintiff attests that, in this situation, inmates were told to allow the caller to continue to provide information without interruption, while the operator entered any information that they deemed necessary or relevant to retrieve the number sought by the caller. Plaintiff also attests that during his period of employment there were numerous occasions where inmates encountered equipment malfunctions, which included times when the computerized system would transfer a call to the call center, then drop the call and transfer another call, without ever clearing the screen of the information entered by the operator. Plaintiff attests that, despite these



technical problems, on August 2007 UNICOR posted memos advising that, beginning September 1, 2007, Grade 1 level pay inmates would be required to handle all calls at thirty seconds per call, down from thirty five seconds per call, and that on August 23, 2007 he and several other inmates complained to Parks that these new requirements were unreasonable. Plaintiff attests that Parks replied by telling him that, if he did not want to work, he could "just quit", and then she immediately walked away.

Plaintiff alleges that on August 27, 2007, Parks wrote a UNICOR job action report alleging that he had violated call center rules and recommending his termination. Plaintiff attests that Parks did not review the call or the report with him prior to forwarding her report to McLaughlin. Plaintiff further attests that McLaughlin did not offer him an opportunity to either review the call alleged in the report, nor did he provide Plaintiff with a copy of the report or read the entire report to him. Plaintiff attests that McLaughlin simply told him to make sure that he search the proper information, and that he did not ask Plaintiff to sign the report or make a written statement on the report. Plaintiff attests that he never refused to sign the report. Plaintiff attests that McLaughlin instructed staff supervisor Jones to insert him back into the line, following which Plaintiff began another work segment. However, he was later ordered to terminate his work segment, and was told by Jones that Parks had instructed her to take him [Plaintiff] out of the line indefinitely.

Plaintiff alleges that on August 28, 2007 he returned to the factory and asked McLaughlin if he could return to work, but that McLaughlin told him that he was not going to get involved in the dispute between Plaintiff and Parks, and suggested that Plaintiff apologize to Parks and ask her to allow him to come back to work. Plaintiff alleges that later, on September 4, 2007, Superintendent Outlaw returned to work after being away for two weeks and fired him after only



12

reading the written report by Parks. Plaintiff attests that he never received any disciplinary hearing

or any sanctions for the actions alleged in the report. Plaintiff attests that when he asked Outlaw on

September 6, 2007 if he could return to work, Outlaw told him that he could not return to work

because Johnson did not want him in the call center, because Plaintiff might encourage other inmates

to complain about the heightened work standards. Plaintiff alleges that Johnson was supervising

representative of the company for which UNICOR had a contract.

Plaintiff further attests that Warden John Owen did not follow the proper procedure

that was supposed to be used for sanctioning inmates alleged to have violated the rules and

regulations at FCI Williamsburg. Plaintiff specifically alleges that Owens did not follow proper

grievance procedures, or the procedures for handling grievance appeals, "contrary to the established

BOP polices and laws of the United States Constitution." Plaintiff complains about how a grievance

filed by another inmate, Carl Crowe, was handled, comparing Crowe's grievance process unfavorably

to his own. <u>See generally</u>, <u>Plaintiff's Affidavit</u>.

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the

pleadings is appropriate. Once the moving party makes this showing, however, the opposing party

must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e),

Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed

by a <u>pro se</u> litigant to allow the development of a potentially meritorious case, <u>see</u> <u>Cruz v. Beto</u>, 405



13

U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990)

## I.

## Bivens Claims

Bivens established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. Bivens, 403 U.S. at 397. A Bivens claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983; therefore, case law involving § 1983 claims is applicable in Bivens actions, and vice versa. See Farmer v. Brennen, supra; Bolin v. Story, 225 F.3d 1234, 1241-1242 (11th Cir. 2000); Campbell v. Civil Air Patrol, 131 F.Supp 2d 1303, 1310, no date (M.D.Ala. 2001); see also, note 1, supra. As federal employees, the individual Defendants Outlaw, Owen, McLaughlin and Parks are subject to suit for damages in their individual capacities in a Bivens lawsuit. F.D.I.C. v. Meyer, 510 U.S. 471, 484 (1994)[Bivens claim can be brought against an individual federal employee in his individual capacity.][5] However, even though subject to suit for damages in a Bivens action, after careful review of the arguments and evidence presented, the undersigned finds and concludes that these Defendants are entitled to summary judgment on Plaintiff's Bivens claims.

First, with respect to Plaintiff's argument that his due process rights were violated

---

[5] The Defendants' Federal Bureau of Prisons and Federal Prison Industries are not subject to suit under Plaintiff's Bivens claim. Moore v. U.S. Dept. of Agriculture on Behalf of Farmers Home Admin., 55 F.3d 991, 995 (5th Cir. 1995); FDIC v. Meyer, 510 U.S. at 484-486 (1994). As previously noted, the remaining individual Defendant, Mr. Johnson, is not a federal employee, nor has he ever been served with process in this case.



when he was terminated from his prison job without some type of hearing or other administrative procedure, the constitution does not create a property or liberty interest in prison employment. Therefore, Plaintiff has no constitutionally protected due process rights with respect to his termination from his prison job. Johnson v. Knable, No.88-7729, 1988 WL 119136, at * 1 (4th Cir. 1988)[Prison work assignments "are matters within the discretion of prison officials and denial of employment does not, in and of itself, abridge any constitutional right of the inmate"]; Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978). While federal law does allow for discretionary compensation for inmates assigned to an industrial operation such as UNICOR; see 18 U.S.C. § 4126(c); no constitutionally protected liberty or property interest is created by this statute or any regulatory scheme devised to govern how prison jobs are handled. See Ridgeway v. Dayl, No. 05-1549, 2006 WL 2050586 at * 4 (D.S.C. July 14, 2006); James v. Jackson, No. 08-144, 2009 WL 291162, at * 8 (D.S.C. Feb. 4, 2009)["[I]nmates do not have a liberty interest derived from the due process clause, nor do they have a property interest, in a specific job or any job at all while incarcerated"]; Williams v. Farrior, 334 F.Supp. 2d 898, 903-904 (E.D.Va. 2004)[A prisoner has no right to any prison job, much less a specific prison job]; Woodworth v. United States, 44 Fed.Appx. 112 (9th Cir. 2002). Indeed, there is no constitutional requirement that Plaintiff even receive any pay for working at a prison job. Cf. Talkowski v. Lane, No. 89-6338, 1990 WL 60706 at *2 (N.D.Ill. Apr. 20, 1990) ["By its terms the Thirteenth Amendment allows involuntary servitude as a punishment for persons convicted of a crime, like [Plaintiff]. Prison officials thus may compel inmates to work - even for no pay - without running afoul of the Thirteenth Amendment."]; Ray v. Mabry, 556 F.2d 881, 882 (8th Cir. 1977); Wendt v. Lynaught, 841 F.2d 619, 620-21 (5th Cir. 1988); Bowen v. Quarterman, 339 Fed.Appx. 479, 481-482 (5th Cir. 2009).



15

With respect to Plaintiff's claim that his termination was in fact in retaliation for exercising his constitutionally protected free speech rights when he complained about new job requirements, a claim Plaintiff argues is supported by a comparison of how he was treated versus how other inmates were treated, Plaintiff has provided no evidence whatsoever to support such a claim. Defendants correctly note that claims of retaliation are generally treated with skepticism by the Courts, because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Cochran v. Morris, 73 F.3d 310, 317 (4th Cir. 1996), (citing Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)). Here, Plaintiff essentially ascribes retaliatory motives to explain his termination as well as other actions taken by prison officials, such as the handling of his grievances. However, none of the exhibits provided to the Court, either by the Defendants or by the Plaintiff, constitutes evidence to support Plaintiff's claim that he was treated more harshly than other inmates or that he was being retaliated against for having engaged in some constitutionally protected activity. See Atkinson v. Bohn, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam) [speculative and conclusory allegations cannot support retaliation claim]; Wright v. Vitall, No. 91-7539, 1991 WL 127597 at **1 (4th Cir. July 16, 1991) [Retaliation claim based on mere conclusory statements cannot withstand defendants' summary judgment motion]; LaCroix v. Williams, No. 97-0790, 2000 WL 1375737 at *4 (W.D.N.Y. Sept. 21, 2000) ["Plaintiff's conclusory allegations aside, there is simply nothing in the record to support his version of the facts and plaintiff's claim for retaliation fails"].

Plaintiff simply alleges in a conclusory manner that Parks' termination of him was in retaliation for his having complained about new work requirements being unfair. Such general and conclusory claims of retaliatory animus, without any supporting evidence, are simply not sufficient

16



to maintain a retaliation claim in a <u>Bivens</u> actions, or to survive the Defendants' motion for summary judgment. <u>See</u> <u>Harris v. Ostrout</u>, 65 F.3d 912, 916 (11th Cir. 1995)[case dismissed where Plaintiff produced nothing beyond his own conclusory allegations suggesting that prison official's actions were motivated by a retaliatory animus]; <u>Woods v. Edwards</u>, 51 F.3d 577, 580-581 (5th Cir. 1995) [summary judgment affirmed where inmate offered no evidence other than his personal belief that the alleged retaliatory actions were based on his exercise of his rights]; <u>Adams</u>, 40 F.3d at 74-75, <u>cert. denied</u>, 514 U.S. 1022 (1995); <u>Southmark Prime Plus, L.P. v. Falzone</u>, 776 F.Supp. 888, 891 (D.Del. 1991); <u>see</u> <u>Nasim v. Warden, Md. House of Correction</u>, 42 F.3d 1472, 1475 (4th Cir. 1995), <u>reh'g</u> 64 F.3d 951 (4th Cir. 1995), <u>cert.</u> <u>denied</u>, 516 U.S. 1177 (1996); <u>see</u> <u>also</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986) [courts need not assume the truth of legal conclusions couched as factual allegations]; <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 12 (6th Cir. 1987) ["[E]ven though <u>pro se</u> litigants are held to less stringent pleading standards then attorneys, the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; <u>House v. New Castle County</u>, 824 F.Supp. 477, 485 (D.Md. 1993) [plaintiff's conclusory allegations insufficient to maintain claim]; <u>see</u> <u>Mt. Healthy City School District Board of Education v. Doyle</u>, 429 U.S. 274, 287 (1977) [in order to be actionable, an alleged retaliatory act must violate some constitutional right of an inmate or constitute punishment for the exercise of a constitutional right].

　　　　Finally, to the extent Plaintiff's <u>Bivens</u> claim encompasses his accusations that one or more of the individual Defendants, and in particular the Defendant Owens, mishandled or improperly handled his grievances, this is not a claim cognizable under <u>Bivens</u>, as there is no constitutional right to access to a prison grievance procedure. <u>See</u> <u>Adams v. Rice</u>, supra; <u>Buckley v. Barlow</u>, 997 F.2d 494, 495 (8th Cir. 1993) [existence of a prison grievance procedure does not confer

17



any substantive right upon inmates]; <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991); <u>Brown v. Dodson</u>, 863 F.Supp. 284 (W.D.Va. 1994) [inmates do not have a constitutionally protected right to a grievance procedure]; <u>Azeez v. DeRobertis</u>, 568 F.Supp. 8, 10 (N.D.Ill. 1982) [even where a state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights]; <u>Burnside v. Moser</u>, 138 Fed.Appx. 414, 415-416 (3d Cir. June 30, 2005). Therefore, a state's failure to follow its grievance procedures does not give rise to a § 1983 claim. <u>Spencer v. Moore</u>, 638 F.Supp. 315, 316 (E.D.Mo. 1986) [holding that an inmate grievance procedure is not constitutionally required]; <u>see</u> <u>also</u> <u>McGuire v. Forr</u>, No. 94-6884, 1996 WL 131130, at *1 (E.D.Pa. March 21, 1996), <u>aff'd</u>, 101 F.3d 691 (3d Cir. 1996) [creation of a grievance system by a state does not create any federal constitutional rights, as prisoners are not constitutionally entitled to a grievance procedure]; <u>Moore v. Sergent</u>, No. 01-1271, 2001 WL 1355298 (6th Cir. Oct. 26, 2001); <u>cf</u>. <u>Sprouse v. Babcock</u>, 870 F.2d 450, 452 (8th Cir. 1989) [prison officials may place reasonable limits on prisoner's access to grievance procedure]. Therefore, while Plaintiff may have some further administrative process he can pursue with respect to this complaint, his dissatisfaction with the way his grievances were handled does not give rise to a claim prosecutable in a <u>Bivens</u> action.

Defendants are entitled to summary judgment on Plaintiff's <u>Bivens</u> claims.

## II.

### FTCA Claim

One of Plaintiff's exhibits attached to his complaint (Court Docket No. 19-2, pp. 18-19) is a response from the BOP to a tort claim Plaintiff had filed, showing Tort Claim No. TRT-SER-2008-04377, and Plaintiff has asserted a claim under the Federal Tort Claims Act with respect to his



dismissal from his UNICOR job.

The FTCA waives sovereign immunity and allows suits against the United States for personal injuries caused by government employees acting within the scope of their employment. Under this Act, a plaintiff may recover monetary awards from the United States for damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope...of employment." 28 U.S.C. § 1346(b). However, in order to obtain relief in federal court under the FTCA, a litigant must first have exhausted their administrative remedies. See 28 U.S.C. § 2675; McNeil v. United States, 508 U.S. 106, 113 (1993) ["The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."].

The Defendants' motion for summary judgment does not address the claim Plaintiff has brought under the FTCA, nor have the Defendants moved for summary judgment on this claim. Therefore, if the Court adopts the recommendation set forth hereinabove with respect to Plaintiff's Bivens claims, Plaintiff's FTCA claim will remain to be litigated.

### Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment with respect to Plaintiff's Bivens claims be **granted**, and that these claims be **dismissed**. Further, as the individually named Defendants are not subject to suit under Plaintiff's remaining FTCA claim, all of these Defendants (Outlaw, Owen, McLaughlin, and Parks, as well as the unserved Defendant Johnson) should be dismissed as party Defendants in this case. See 28 U.S.C. § 2679(b)(1).

Plaintiff's FTCA claim will then be the only remaining claim being asserted in this lawsuit. With respect to this claim, the United States of America should be substituted for the Federal Bureau of Prisons and Federal Prison Industries as the proper party Defendant. See 28 U.S.C. §

19



2679(a).

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 8, 2010

Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

