IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Kevin Patrick Huff, | ) CIVIL ACTION NO. 9:09-0520-RBH-BM |
|           Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| United States of America, | ) |
|           Defendant. | ) |

This action was originally filed by the Plaintiff, pro se, pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) and the Federal Tort Claims Act (FTCA). By Order filed April 8, 2010, Plaintiff's Bivens' claim, as well as all Defendants named in that claim, were dismissed, leaving only Plaintiff's FTCA claim to be litigated. See Court Docket No. 57; see also Court Docket No. 51. While the United States of America had not originally been named as a party Defendant, as part of the Court's Order of April 8, 2010, the United States was substituted as the proper party Defendant under Plaintiff's remaining FTCA claim.

The United States filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on September 27, 2010. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on September 28, 2010 advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendant's motion may be granted, thereby



ending his case.

After receiving extensions of time, Plaintiff filed a memorandum in opposition to the Defendant's motion on November 8, 2010, following which the Defendant filed a reply memorandum on November 18, 2010.  Defendant's motion is now before the Court for disposition.[1]

## Background and Evidence

Plaintiff alleges in his verified amended complaint[2] that he is a federal prison inmate at the Federal Correctional Institution Williamsburg (FCI Williamsburg) in Salter, South Carolina. Plaintiff had a prison job through Federal Prison Industries (UNICOR).

Plaintiff alleges in Claim One of his Complaint that he was dismissed from his UNICOR work status by Trevor Outlaw, Superintendent of Prison Industries at FCI Williamsburg, on September 4, 2007 based on a recommendation from a UNICOR staff member who had written a "UNICOR Job Action Report".  Plaintiff alleges that Program Statement (PS) 8120.02 provides that Outlaw:

> May remove an inmate from Industries work status in cooperation with the unit team . . . (c) an inmate found to have committed a prohibited act (whether or not FPI related) resulting in segregation or disciplinary transfer is also to be dismissed.

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C.  The Defendant has filed a motion for summary judgment.  As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).  While Plaintiff's amended complaint (Court Docket No. 19) is not verified, pursuant to subsequent motion of the Plaintiff and Order of the Court (see Court Docket No. 72) Plaintiff's claims asserted under the FTCA are deemed to be verified.  Therefore, the undersigned has considered the factual allegations set forth in the verified Amended Complaint in issuing a recommendation in this case.



Plaintiff alleges that Outlaw did not conduct his removal in cooperation with the unit team, that Outlaw never consulted anyone other than UNICOR staff, and that Plaintiff never received either segregation time or a disciplinary transfer as a result of his alleged job infraction. Plaintiff alleges that this deprived him of "his property interest in working in the UNICOR Program, contrary to policy."

Plaintiff alleges in Claim Two of his Complaint that Program Statement 5270.08[3] has been violated. Plaintiff alleges that this PS requires that staff shall control inmate behavior in a completely impartial and consistent manner. Plaintiff alleges that he was fired for allegedly violating a no tolerance call center rule, but that another inmate (Renard Nealy) violated a call center rule (using a UNICOR staff member's office phone without authorization) but was not fired. Plaintiff further alleges that another inmate, Carl Crowe, also committed several violations listed in the no tolerance section of the rule book but was also not fired. Finally, Plaintiff alleges that yet another inmate, [no first name provided] Curry, violated a listed rule, but that Outlaw did not fire or suspend Curry even though a recommendation was made that Curry be fired. Therefore, Plaintiff alleges that FCI Williamsburg UNICOR staff are enforcing their termination procedures in a selective manner contrary to PS 5270.08 and BOP policy.

Plaintiff asks to be returned to UNICOR work status, and to receive monetary damages, including punitive damages. See generally, Verified Complaint.

Plaintiff has attached numerous exhibits to his complaint, which have not been objected to by the Defendant. These exhibits include a copy of Plaintiff's job action report, copies

---

[3] While Plaintiff cites to 5270.07, he apparently meant to refer to PS 5270.08, which tracts the language Plaintiff cites.



3

of documents denoting his attempts to resolve the issues surrounding his termination from his job including a request for administrative remedies, and a response he received from the supervisory attorney of the BOP consolidated legal center regarding an FTCA claim Plaintiff filed concerning his termination.

In support of summary judgment in the case, Loretta Parks (a previously dismissed Defendant) has submitted an affidavit wherein she attests that she is the supervisory production controller at the prison industries facility at FCI Bryan, Texas. Parks attests that at the time relevant to Plaintiff's complaint, she was the Quality Assurance Manager at the prison industries call center at FCI Williamsburg. Parks attests that Federal Prison Industries, which operates under the trade name "UNICOR", operates a variety of factories and service centers which provide goods and services to a variety of government agencies. UNICOR operates a call center at FCI Williamsburg, which provides inmate operators to respond to directory assistance calls.

Parks attests that is unusual for federal prison inmates to be given access to data bases of information about members of the public, and as such there are very specific and strict rules about how and when inmate operators can access the data base. Parks attests that in order to ensure these rules are met, UNICOR implemented recording and review processes which record inmate operator contacts with the public and which identify what the inmate operator was accessing in the data base and at what point during the call. Parks attests that, as quality assurance manager, one of her duties was to conduct random reviews of the various contacts inmate operators had during the directory assistance calls, and that in doing so she would randomly punch in an operator code and monitor whatever call was retrieved. Parks attests that if she found improper behavior during the call, she would write a job action report, and depending on the severity of the violation, she could recommend



various job sanctions, including removal. Generally, this job action would be discussed with the inmate and, if possible, remedial action could be taken.

Parks attests that she is familiar with the Plaintiff, and that on August 27, 2007 she reviewed a call processed by the Plaintiff in which Plaintiff did not repeat the city and state requested by the caller. Rather, he accessed information in New Orleans and searched for a list for Joe's Corn, even though the caller was requesting a number for Budget Rent a Car. Parks attests that Plaintiff repeated the request for Budget Rent a Car, but was searching for Joe's Corn in New Orleans. Parks attests that once the New Orleans information appeared on Plaintiff's screen, he then conducted a second search in the toll free data base for Budget Rent A Car and provided that number to the caller. Parks attests that this was a blatant violation of UNICOR call center rules, and that she prepared a UNICOR job action report detailing this information and recommending that Plaintiff be terminated.

Parks attests that she forwarded this report to the factory manager for review, but does not recall discussing the report with the Plaintiff, although it was her general practice to do so. Parks attests that she recommended Plaintiff's termination because of his flagrant violation of call and work rules, and does not recall having any prior conversations with him about his dislike of the call processing standards, although it was common for inmates to complain about those standards. Parks attests that these standards are set to ensure high quality and appropriate call processing in an efficient manner, and that even though numerous inmates have complained about these standards, such complaints do not impact her review of inmate operator calls nor her recommendations for job actions. Parks further attests that she recommended that at least five other inmate operators be terminated as a result of the same improper use of the data base.

Parks attests that she did not put in her report that Plaintiff refused to sign the job



action report, as she did not complete that portion of the form, nor is this notation in her handwriting. Parks attests that that notation appears to have been written by the factory manager, Mr. McLaughlin. Parks further attests that any staff member in UNICOR could temporarily remove an inmate operator from the call center line pending review of a job action, and while she does not recall if she suspended Plaintiff or not, it would have been appropriate for her do so, especially given Plaintiff's inappropriate action during the telephone call.

With respect to Plaintiff's claim that another inmate was allowed to place a directory assistance call from her office phone during which he discovered call center infractions by yet a different inmate, but that neither of these inmates were terminated, Parks attests that the inmate referred to in that allegation was an inmate assigned as a trainer. Parks attests that it was part of her responsibility to ensure that this inmate was trained and knowledgeable about the process in order to assist other inmate operators, and that she had him in her office while she was conducting test calls to the FCI Williamsburg call center. Parks attests that they found several minor problems in responding to customer requests, and that these errors were pointed out and used as a training opportunity. Parks further attests that these "violations" were errors that were correctable, as opposed to the blatant violation of rules committed by the Plaintiff. See generally, Parks Affidavit.

Ardelphius McLaughlin (another previously dismissed Defendant) has provided an affidavit wherein he attests that he is the Factory Manager at the call center at FCI Williamsburg. McLaughlin attests that there are strict work rules at the call center that prohibit inmate operators from accessing information that is not requested by the caller, and that violations of this rule can lead to an inmate's termination from UNICOR. McLaughlin attests that Plaintiff worked as an operator for approximately fifteen (15) months prior to his termination from UNICOR in September 2007,



that Plaintiff was familiar with the work rules and prohibitions on accessing information not related to the caller's request, and that Plaintiff was a good worker who had advanced to the highest available pay grade.

McLaughlin attests that on August 27, 2007, he was made aware of Plaintiff's improper actions during a directory assistance encounter, that he received the job action report prepared by Parks, and that he reviewed the description of the incident and agreed that it was a blatant violation of the work rules. McLaughlin attests that he spoke with Plaintiff and discussed the job action report and the recommendation of termination, and that Plaintiff was given an opportunity to make a statement by writing on the form but refused to do so. McLaughlin attests that he noted that Plaintiff refused to sign the job action report and wrote "Refused to sign" on the form under the heading "Inmate's Comments". McLaughlin attests that he concurred with Parks' recommendation and forwarded the request to the Superintendent of Industries, Mr. Outlaw, for final decision.

McLaughlin attests that Plaintiff was temporarily removed from operator duties during the time this job action report was being reviewed and considered by Outlaw, which was appropriate given the severity of Plaintiff's infraction. McLaughlin further attests that Parks had the authority to temporarily remove any inmate operator from the line anytime she recognized a problem pending further review or investigation. With respect to any claim that this job action was in retaliation for Plaintiff's complaints to Parks about changing work requirements and her fear that Plaintiff would cause other inmates to complain, McLaughlin attests that inmate operators routinely complain when changes are made, and that while he does not recall if Plaintiff complained about the changes in 2007, even if he did, it was not the reason for his termination. Rather, Plaintiff's termination was for accessing information unrelated to a caller's request, which was a direct violation of the rules.



McLaughlin attests that it was standard practice to terminate any inmate operator who was found to have violated the work center rules concerning improper access of data, and that over the past three years, some seventy-five to eighty inmate operators have been terminated for this behavior. See generally, McLaughlin Affidavit.

Trevor Outlaw (another previously dismissed Defendant) has submitted an affidavit wherein he attests that he is the Superintendent of Prison Industries at FCI Williamsburg, where UNICOR operates a call center. Outlaw attests that in early 2007, he reviewed a job action report recommending that Plaintiff be terminated from UNICOR due to his improper actions during a directory assistance encounter. Outlaw attests that after review of the report, he concurred with the recommendation, and that as superintendent, he is empowered to remove an inmate from the UNICOR work detail in cooperation with the unit team. Outlaw attests that this policy requirement ensures communication to the unit team when the inmate is being removed from the UNICOR detail so that he can be given another work assignment if necessary. However, the unit team does not control when an inmate is assigned to or removed from UNICOR. Outlaw attests that if an inmate has been removed from UNICOR due to improper behavior on the work site, it is appropriate to place them on a different work assignment, and that in this case the unit team was notified of the reason for Plaintiff's removal from UNICOR and he was given a different work assignment.

Outlaw further attests that there was no need for an incident report to be written charging Plaintiff for a violation of the disciplinary rules. Outlaw attests that, while disciplinary action could have been taken, Plaintiff's behavior violated the work rules in UNICOR, and it was deemed sufficient to simply remove him from his work assignment. There is no policy requirement that an inmate be subjected to disciplinary action prior to being removed from a UNICOR work



8

assignment. Outlaw also attests that he does not recall having any conversation with Plaintiff on September 5, 2007 in which he supposedly stated that he was concerned about Plaintiff's complaints to Parks about changing call processing times, nor did he base his decision on any complaints that Plaintiff may have voiced about changes in the call processing requirement. Outlaw attests that many inmates complained about such changes, and that such complaints are simply a part of the daily activities in the call center and did not in any way impact his decision concerning the Plaintiff. Outlaw also attests that he does not recall having any conversation with Mr. "Johnson" about complaints from the Plaintiff or about whether he should be allowed to return to work, and that Plaintiff was removed from UNICOR due to his violation of the posted work rules, nothing more.

    With respect to Plaintiff's claim that Outlaw had somehow treated him differently from other inmates who had violated work rules, Outlaw attests that he endeavors to remain fair and impartial in making decisions, always keeping security and the good of the UNICOR operation in mind, and that he takes the recommendations of the factory manager and the quality assurance supervisor into consideration when taking job action concerning UNICOR workers. Outlaw attests that while there may be other situations where it is necessary to take job action against an inmate worker, if the violation of the work rules is less severe, then the job action will be less severe. Here, Plaintiff's violation was deemed to be very significant, and dismissal was the appropriate sanction. See generally, Outlaw Affidavit.

    The Defendants have also submitted a copy of the call center rules, on which Plaintiff acknowledged receiving a copy. This document shows that misuse of UNICOR call center electronic communications devices and/or acquiring phone numbers or other information from the computers is a violation of UNICOR's set minimum work standards, and that such conduct could result in



9

disciplinary action and/or termination. See Defendant's Exhibit F. A copy of Plaintiff's Inmate Work Detail History has also been provided. See Defendant's Exhibit G.

Plaintiff's opposition to Defendant's motion is in affidavit form. In this affidavit, Plaintiff attests that all of the documents attached to his affidavit are true and correct copies. However, there are no documents attached to Plaintiff's affidavit.

Plaintiff did attach an affidavit to the now dismissed Defendants' motion for summary judgment of September 18, 2009, wherein he attests that he was hired as a call center operator in May 2006. Plaintiff attests in that affidavit that because a large percentage of the calls being received by inmates at the call center were calls in which the computerized operator system could not comprehend the information being provided by the caller, it was common for inmates to receive calls in which the caller was still attempting to provide information to the computer. Plaintiff attests that, in this situation, inmates were told to allow the caller to continue to provide information without interruption, while the operator entered any information that they deemed necessary or relevant to retrieve the number sought by the caller. Plaintiff also attests that during his period of employment there were numerous occasions where inmates encountered equipment malfunctions, which included times when the computerized system would transfer a call to the call center, then drop the call and transfer another call, without ever clearing the screen of the information entered by the operator. Plaintiff attests that, despite these technical problems, on August 2007 UNICOR posted memos advising that, beginning September 1, 2007, Grade 1 level pay inmates would be required to handle all calls at thirty seconds per call, down from thirty five seconds per call, and that on August 23, 2007 he and several other inmates complained to Parks that these new requirements were unreasonable. Plaintiff attests that Parks replied by telling him that, if he did not want to work, he could "just quit",

10



and then she immediately walked away.

Plaintiff alleges that on August 27, 2007, Parks wrote a UNICOR job action report alleging that he had violated call center rules and recommending his termination. Plaintiff attests that Parks did not review the call or the report with him prior to forwarding her report to McLaughlin. Plaintiff further attests that McLaughlin did not offer him an opportunity to either review the call alleged in the report, nor did he provide Plaintiff with a copy of the report or read the entire report to him. Plaintiff attests that McLaughlin simply told him to make sure that he search the proper information, and that he did not ask Plaintiff to sign the report or make a written statement on the report. Plaintiff attests that he never refused to sign the report. Plaintiff attests that McLaughlin instructed staff supervisor Jones to insert him back into the line, following which Plaintiff began another work segment. However, he was later ordered to terminate his work segment, and was told by Jones that Parks had instructed her to take him [Plaintiff] out of the line indefinitely.

Plaintiff alleges that on August 28, 2007 he returned to the factory and asked McLaughlin if he could return to work, but that McLaughlin told him that he was not going to get involved in the dispute between Plaintiff and Parks, and suggested that Plaintiff apologize to Parks and ask her to allow him to come back to work. Plaintiff alleges that later, on September 4, 2007, Superintendent Outlaw returned to work after being away for two weeks and fired him after only reading the written report by Parks. Plaintiff attests that he never received any disciplinary hearing or any sanctions for the actions alleged in the report. Plaintiff attests that when he asked Outlaw on September 6, 2007 if he could return to work, Outlaw told him that he could not return to work because Johnson did not want him in the call center, because Plaintiff might encourage other inmates to complain about the heightened work standards. Plaintiff alleges that Johnson was supervising



11

representative of the company for which UNICOR had a contract.

Plaintiff further attests that Warden John Owen did not follow the proper procedure that was supposed to be used for sanctioning inmates alleged to have violated the rules and regulations at FCI Williamsburg. Plaintiff specifically alleges that Owens did not follow proper grievance procedures, or the procedures for handling grievance appeals, "contrary to the established BOP polices and laws of the United States Constitution." Plaintiff complains about how a grievance filed by another inmate, Carl Crowe, was handled, comparing Crowe's grievance process unfavorably to his own. See generally, Plaintiff's Affidavit.

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after



12

careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendant is entitled to summary judgment in this case.

The FTCA waives sovereign immunity and allows suits against the United States for personal injuries caused by government employees acting within the scope of their employment. Under this Act, a plaintiff may recover monetary awards from the United States for damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope...of employment." 28 U.S.C. § 1346(b).[4] Plaintiff has failed to submit sufficient evidence to give rise to a genuine issue of fact as to whether a wrongful or negligent act for purposes of an FTCA claim was committed.

First, the Defendant correctly notes that Plaintiff has identified no South Carolina or federal law which creates an action in tort for a violation of agency regulations or polices. A tort is defined as the violation of some duty owing to the Plaintiff imposed by the general law or otherwise or a legal wrong committed independently of a contract. Glisson v. Loxley, 366 S.E.2d 68, 71 (Va. 1988), citing Black's Law Dictionary 1335 (5th Ed. 1979). Plaintiff had no right to a prison job at all, and the existence of rules for maintenance of these jobs does not establish any right actionable in tort to keep such a job. Cf. Onwuazombe v. Dodrill, No. 07-873, 2008 WL 1758641 at * 4 (S.D.N.Y. Apr. 16, 2008)["[A]lthough the [BOP] regulations outline procedural mechanisms for

---



[4]In order to obtain relief in federal court under the FTCA, a litigant must first have exhausted their administrative remedies. See 28 U.S.C. § 2675; McNeil v. United States, 508 U.S. 106, 113 (1993) ["The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."]. The United States does not contest exhaustion of administrative remedies with respect to Plaintiff's Claim One, but does argue that Plaintiff did not administratively exhaust his Claim Two (that the BOP is allowing FCI Williamsburg UNICOR's staff to practice its termination procedures in a selective manner). See Court Docket No. 19-2, pp. 13-19. However, the claim submitted is arguably ambiguous on this point, so out of an abundance of caution, the undersigned has treated both claims as having been exhausted for purposes of this opinion.

13

terminating inmates' employment, 'no . . . entitlement can derive from a statute that merely establishes procedural requirements.'"] (quoting Watson v. City of New York, 92 F.3d 31, 38 (2d Cir. 1996)); Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995)["[A] prisoner does not have a legitimate claim of entitlement to continuing UNICOR employment. The regulation relied upon [which requires approval of his unit team for termination] is procedural and does not place substantive restrictions on the authority of prison officials to remove an inmate from UNICOR"]; Webber v. Bureau of Prisons, 198 Fed.Appx. 406, 408 (5th Cir. 2006)[Dismissing FTCA claim filed by prison concerning loss of prison job in a disciplinary proceeding, in part, because Plaintiff had failed to articulate an FTCA claim]; Santana-Rosa v. United States, 335 F.3d 39, 43 (1st Cir. 2003)[BOP exercises broad discretion in assigning inmates to particular jobs]; Garza v. Miller, 688 F.2d 480, 486 (7th Cir. 1982)["Any expectation that [Plaintiff] may have had of keeping his prison job does not amount to a property or liberty interest."]; James v. Jackson, No. 08-144, 2009 WL 291162, at * 8 (D.S.C. Feb. 4, 2009)["[I]nmates do not have a liberty interest derived from the due process clause, nor do they have a property interest, in a specific job or any job at all while incarcerated"]; Williams v. Farrior, 334 F.Supp. 2d 898, 903-904 (E.D.Va. 2004)[A prisoner has no right to any prison job, much less a specific prison job]. Therefore, there simply is no tort liability for Plaintiff's claim concerning his termination from a prison job.

Additionally, even assuming for purposes of further discussion that the Defendant did have a duty to the Plaintiff to follow prison policy with respect to Plaintiff's dismissal from his prison job such that he could maintain a tort claim for a violation of that policy, the evidence presented to the Court does not show that any violation occurred. The call center rules, which Plaintiff received and knew of, specifically provide that the misuse of UNICOR call center electronic communication



14

devices will result in disciplinary action and/or termination. Defendant's Exhibit F. Plaintiff's own exhibits reflect that Plaintiff was terminated from his job for violation of call center rules after staff wrote a UNICOR Action Report detailing the incident in question and recommending his dismissal. See Plaintiff's Exhibit (letter to the Plaintiff dated August 29, 2008 referencing Tort Claim No. TRT-SER-2008-04377). In such a situation, the superintendent of industries (Outlaw) was entitled to make the final decision on whether Plaintiff should be terminated. Outlaw Affidavit. Plaintiff has provided no evidence to show that Outlaw did not have this authority (other than Plaintiff's own conclusory claim), nor has any policy, regulation or statute been provided as an exhibit showing that Outlaw did not have this final authority. See Outlaw Affidavit, ¶ 7; Onwuazombie, 2008 WL 17588641 at * 4 [UNICOR regulations "are phrased almost entirely in discretionary terms"]; see also 28 U.S.C. § 2680(a)[Providing that the FTCA's general waiver of sovereign immunity does not apply to discretionary acts]; see generally Queen v. United States, No. 05-3341, 2007 WL 628182, at * 3-4 (D.K. Feb. 26 2007). Hence, there is no evidence that the Defendant committed a "wrongful" act under the FTCA.

With respect to negligence, whether any government employee was negligent is to be determined "in accordance with the law of the place where the act or omission occurred," here the State of South Carolina. 28 U.S.C. § 1346(b). In order to prove negligence in South Carolina, Plaintiff must prove by a preponderance of the evidence that 1) the Defendant had a legal duty of care; 2) the Defendant failed to discharge that duty; and 3) Defendant's breach proximately caused him injury. Ajaj v. United States, 479 F.Supp.2d 501, 549 (D.S.C. 2007); Goode v. St. Stephens United Methodist Church, 494 S.E.2d 827, 834 (S.C. 1997); Bailey v. Segars, No. 3370, 2001 WL 791740 (S.C.Ct.App. 2001); Hubbard v. Taylor, 529 S.E.2d 549 (S.C.Ct.App. 2000). Further, Plaintiff is



required to show negligence with reasonable certainty, not through mere conjecture, and he may not attempt to prove negligence through the doctrine of <u>res ipsa loquitur</u>. <u>Ajaj</u>, 479 F.Supp.2d at 549; <u>Eickhof v. Beard-Laney</u>, 20 S.E.2d 153, 155 (S.C. 1942); <u>Crider v. Infinger Transportation Co.</u>, 148 S.E.2d 732, 734-735 (S.C. 1966).

Here, the Defendant concededly had a legal duty of care to the extent that prison officials have a duty to provide an appropriate living environment to prisoners. <u>See</u> 18 U.S.C. § 4042, which provides that the standard of duty owed is that of "reasonable care". <u>See</u> <u>Johnson v. U. S. Government</u>, 258 F.Supp. 372, 376 (E.D.Va. 1966)[Under Section 4042, a prison official's duty requires only the exercise of ordinary diligence under the circumstance]; <u>see also</u> <u>In re Agent Orange Product Liability Litigation</u>, 635 F.2d 987, 996 (2d Cir. 1980) [dissenting] (citing <u>Owens v. Haas</u>, 601 F.2d 1242 (2d Cir. 1979), <u>cert. denied</u>, 444 U.S. 980 (1979)); <u>Harley v. United States</u>, No. 08-820, 2009 WL 187588 at * 4 (D.S.C. Jan. 26, 2009). However, for the reasons already discussed, Plaintiff has failed to establish a genuine issue of fact as to whether the Defendant had a duty to retain Plaintiff in a UNICOR job actionable in tort. <u>Onwuazombe</u>, 2008 WL 1758641 at * 4 [A prisoner has no right to prison employment.]; <u>Artiz v. Schultz</u>, No. 09-986, 2010 WL 2079720 at * 1 (D.N.J. May 25, 2010)["The Court dismissed the FTCA claim on the ground that the facts alleged in the Complaint did not show injury to Plaintiff was caused by the negligent or wrongful act or omission of any United States employee where the United States, if a private person, would be liable to Plaintiff . . . in that Plaintiff . . . *has no legal entitlement to continued Unicor employment*."] (Emphasis added); <u>Webber</u>, 198 Fed.Appx. at 408; <u>Williams</u>, 334 F.Supp.2d at 903-904. Further, Outlaw attests in his affidavit that he had the final authority to take the action that he did, and Plaintiff has provided no evidence whatsoever (other than his own conclusory claims and allegations) to show that a violation of any

16



legal duty occurred. Papasan v. Allain, 478 U.S. 265, 286 (1986) [courts need not assume the truth of legal conclusions couched as factual allegations]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [plaintiff's conclusory allegations insufficient to maintain claim]. Therefore, Plaintiff has failed to establish a genuine issue of fact for a negligence claim under the FTCA against the Defendant with respect to his removal from his prison job.

Finally, with respect to Plaintiff's claim that he was somehow discriminated against because other inmates who had violated call center policies were not terminated from their jobs, even assuming Plaintiff has properly exhausted this claim (which Defendant denies), it is subject to dismissal as Plaintiff has failed to present sufficient evidence to show that any duty owed to him was violated as a result of his termination. Glisson, 366 S.E.2d at 71; Santana-Rosa, 335 F.3d at 43. While some courts have held that government actions which, standing alone, do not violate the constitution, may nonetheless be constitutional *torts* if motivated in substantial part by a desire to punish an individual for exercise of a *constitutional* right; see Brown v. Danberg, No. 09-956, 2010 WL 1644287, at * 3, n. 3 (D.Del. Apr. 21, 2010); it is not clear whether such a claim could be pursued under the FTCA.[5] Further, even if it could be argued that this would be a viable claim under the FTCA, Plaintiff has provided no evidence whatsoever to support such a claim. As was noted in the Report and Recommendation issued March 8, 2010, Plaintiff essentially asserts retaliatory motives to explain his termination as well as other actions taken by prison officials, such as the handling of his grievances. However, none of the exhibits provided to the Court, either by the Defendant or by the Plaintiff, constitutes evidence to support Plaintiff's claim that he was treated more harshly than

---

[5] Of course, Plaintiff did also assert his retaliation claim as a constitutional claim under Bivens. That claim has already been reviewed and dismissed by this Court. See Court Docket Nos. 51 and 57.

17



other inmates or that he was retaliated against for having engaged in some type of protected activity. Cf. Atkinson v. Bohn, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam) [speculative and conclusory allegations cannot support retaliation claim]; Wright v. Vitall, No. 91-7539, 1991 WL 127597 at**1 (4th Cir. July 16, 1991) [Retaliation claim based on mere conclusory statements cannot withstand defendants' summary judgment motion]; LaCroix v. Williams, No. 97-0790, 2000 WL 1375737 at *4 (W.D.N.Y. Sept. 21, 2000) ["Plaintiff's conclusory allegations aside, there is simply nothing in the record to support his version of the facts and plaintiff's claim for retaliation fails"]; see also Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995)[case dismissed where Plaintiff produced nothing beyond his own conclusory allegations suggesting that prison official's actions were motivated by a retaliatory animus].

  Plaintiff's general and conclusory claims that he was treated unfairly out of some type of retaliatory animus, without any supporting evidence, are simply not sufficient to survive the Defendant's motion for summary judgment. Cf. Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995)[case dismissed where Plaintiff produced nothing beyond his own conclusory allegations suggesting that prison official's actions were motivated by a retaliatory animus]; Woods v. Edwards, 51 F.3d 577, 580-581 (5th Cir. 1995) [summary judgment affirmed where inmate offered no evidence other than his personal belief that the alleged retaliatory actions were based on his exercise of his rights]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["[E]ven though pro se litigants are held to less stringent pleading standards then attorneys, the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]. This claim should be dismissed.



## Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 3, 2011
Charleston, South Carolina



19

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

20

